**DICTAPHONE CORPORATION, Appellant,**

v.

**Mrs. Ivar TORREALBA et al., Appellees.**

No. 1089.

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 12, 1975.

Rehearing Denied April 2, 1975.

John T. Golden, Vinson, Elkins, Searls, Connally & Smith, Houston, for appellant.

W. W. Watkins, W. James Kronzer, Kronzer, Abraham & Watkins, Hugh Rice Kelly, Baker & Botts, Houston, for appellees.

TUNKS, Chief Justice.

This is a wrongful death case. It grew out of an automobile-pedestrian collision. J. W. Glenn Smith, Jr., was driving the automobile when it struck and killed Ivar Torrealba. Smith at the time was employed as a salesman for Dictaphone Corporation. Torrealba's survivors sued Smith and Dictaphone for their damages resulting from Torrealba's death. It was stipulated that Smith was guilty of negligence which caused the death. The only issues submitted to the jury were an issue as to whether Smith, at the time in question, "was engaged in the service of Dictaphone Corp. and in furtherance of its business . . ." and issues as to damages.

The jury answered the scope of employment issue in the affirmative and found the amount of damages for each of the survivors. The trial court rendered judgment for the plaintiffs. Dictaphone appeals.

All points of error asserted by the appellant relate to the scope of employment issue. The first seven points state that the trial court erred in failing to direct a verdict for the defendant, Dictaphone, that the court erred in failing to grant Dictaphone's motion for judgment n. o. v. or to disregard the jury's finding as to scope of employment, and that the court erred in submitting the scope of employment issue over appellant's objection as to its evidentiary support. Thus, though some of the points are stated in terms of factual insufficiency or weight of the evidence, they properly present to this Court only the legal "no evidence" question. McDonald v. New York Central Mutual Fire Ins. Co., 380 S.W.2d 545 (Tex.Sup.1964). O'Connor, Appealing Jury Findings, 12 Hous. L.Rev. 65 (1974). In passing on these points of error we must consider only that evidence which is favorable to the appellees and must draw from the facts proved only those reasonable inferences which tend to support the trial court's judgment. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965).

On July 5, 1972, the date of the accident, Smith was a salesman for Dictaphone. He was paid a commission. His territory included eleven counties surrounding Harris

County. The cities of Freeport and Bryan were in his territory. He lived in Stafford, Texas. Dictaphone's Houston office was at 3314 Richmond Avenue. Smith's primary duty was the sale of office dictating and transcribing machines. His duties included delivery and installation of the machines he sold and the explanation to his buyers of their operation. He furnished his own car, a rented one, and was reimbursed for his mileage and other business travel expenses.

On the morning of July 5, Smith went to Freeport to call on customers. He came to Houston late in the afternoon. He stopped first at the office of a finance company to which he had applied for a loan. He was told that his loan had been approved, but that the check had not been written. While he was waiting for his check he went to a nearby lounge where he had a mixed drink of liquor. He then got his check and went to the Dictaphone office. He got to the office about 4:30 or 5:00 o'clock.

Smith had previously sold some equipment to a dentist in Bryan. He went by the office to pick up that equipment for delivery the next morning. He planned to drive to Bryan that night, spend the night there and deliver, install, and explain the operation of the equipment early the next morning. He then planned to drive back to Houston. He had been assigned to work the next afternoon in a booth maintained by Dictaphone at the Shamrock Hilton Hotel in Houston where the Texas State Bar Association was holding its annual convention. He also planned to take a vacation trip beginning Friday afternoon, July 7. He had been told to deliver equipment previously sold by him before he took his vacation.

While at the office Smith picked up the equipment to be delivered and did some paper work at his desk. He left the office between 5:00 and 6:00 p. m. He said that because the traffic was very heavy he decided to go across the street to a drive-in, have a beer, and wait for the traffic to lighten. After drinking the beer Smith started for the Shamrock, where the convention was in progress. He said that his purpose was to see some of his fellow salesmen who were working at the Dictaphone booth or some of his lawyer customers. On his way to the Shamrock he stopped at another drive-in and bought two more beers. He drank one of the beers at the drive-in and the other as he was driving to the Shamrock. While at the drive-in, he discovered that he did not have enough money to buy gasoline and pay his other expenses on the trip to Bryan. He had no credit cards. He resolved to cash a check before he left Houston.

When Smith reached the Shamrock he drove around the place, but since he did not see anyone that he knew and the place was crowded, he decided not to go in because to do so would take too much time. He knew someone at the Holiday Inn Motel on South Main whom he thought would cash a personal check for him, and for that reason he decided to go there. When he got to the Inn he parked his car and went inside looking for his acquaintance who would cash a check. Since the man he knew was not there he resolved to go to the Holiday Inn at Loop 610 and Westheimer in Houston to cash a check. He drove to Westheimer and headed west to the Holiday Inn to cash his check. That Inn was generally on the route to Bryan and it was his intention, after cashing the check, to go on to Bryan. It was while he was driving west in the 1300 block of Westheimer that the accident occurred. The accident occurred between 8:15 and 8:45 p. m.

It is clear that, though Dictaphone had the contractual right to control the details of Smith's work, he was given wide discretion as to when and where he went. Calling on and visiting with his customers and prospective customers, among whom were included lawyers, was part of his job. When he left his office, though he did not follow the most direct route to Bryan, his

going by the Shamrock was not inconsistent with his duties. In fact, Dictaphone maintained a hospitality room at the Shamrock where liquor was served so that its salesmen could socialize with lawyers attending the convention.

Again, when Smith left the Shamrock he did not, in going to the Holiday Inn on South Main, follow the most direct route to Bryan, although the route would not have been a wholly unreasonable one for a driver heading for that city. In this instance, too, his deviation from the direct route, if it was one, was not for purely personal purposes, because he needed to cash a check to get money to pay his expenses on his trip. The same thing is true of his intention to go to the Holiday Inn on Loop 610. The evidence permits the conclusion that his intention to go to both of the Holiday Inns was incidental to his trip to Bryan and that he would not have gone to either but for the intended trip to deliver the equipment.

It is the appellant's contention, however, that Smith's going to Bryan that night, rather than waiting until the next morning to go, was for his personal convenience—to avoid the necessity of getting up early the next day to make the trip. That personal convenience, the appellant argues, and not the performance of his duties, accounts for Smith's being where he was at the time of the accident.

In the first place, the evidence reasonably sustains a conclusion that Smith's making the trip to Bryan that night was necessary to the performance of his duties. His customer was anxious for a quick delivery. His assignment to work in the Shamrock booth made it necessary that he be in Houston the next afternoon. He had been instructed to deliver the equipment before starting his vacation on July 7. His duty included more than just delivery of the equipment. He had to install the equipment, check it to see if it was working properly, and explain its operation to the buyer. Some time would be consumed in the performance of those duties and it was necessary that he get started on them early so that he could be back in Houston in time for his work at the Shamrock booth.

■ In the second place, an employee's arrangement of the performance of his duties in a manner consistent with his personal convenience does not take him out of the scope of his employment. In Restatement (Second) of Agency, § 236 (1958), it is said: "Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person." In the comment under that section, it is said:

The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service, as where the servant drives rapidly, partly to deliver his master's goods, but chiefly in order to terminate his day's work or to return the vehicle to the master's premises. *Id.*, comment *b* at 523–24.

■ We hold that there was some evidence supporting the jury's finding that Smith, at the time of the accident, was acting in the scope of his employment by Dictaphone. Appellant's first seven points of error are overruled. Other authorities supporting this holding include the following: Smith v. Koenning, 398 S.W.2d 411 (Tex.Civ.App.-Corpus Christi 1965, writ ref'd n. r. e.); Gulfcraft, Inc. v. Henderson, 300 S.W.2d 768 (Tex.Civ.App.-Galveston 1957, no writ); Texas Power & Light Co. v. Evans, 225 S.W.2d 879 (Tex.Civ.App.-Dallas 1949, no writ); Smith v. Conner, 211 S.W.2d 630 (Tex.Civ.App.-Galveston 1948, no writ); Wilhoit v. Iverson Tool Co., 119 S.W.2d 709 (Tex.Civ.App.-Beaumont 1938, writ dism'd); Friend-Rowe Motor Co. v. Ricci, 293 S.W. 851 (Tex.Civ.App.-Beaumont 1927, writ

dism'd) ; Marks' Dependents v. Gray, 251 N.Y. 90, 167 N E. 181 (1929).

The scope of employment issue submitted by the trial court, and the instruction accompanying it, were as follows:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that at the time of the occurrence that J. W. Glenn Smith was engaged in the service of Dictaphone Corp. and in furtherance of its business, whether on its premises or elsewhere?

Answer "We Do", or "We Do Not".

In determining whether an employee or agent is engaged in the service of his employer's business and in furtherance thereof, you will consider the nature of the employer's business, the nature of the work of the employee, whether the employer had either expressly or impliedly delegated to the employee the right and power to decide the way and manner of performing the employer's business, and doing things incidental thereto, and all other facts and circumstances admitted by the Court for your consideration.

You are further instructed that an employee who turns aside from his employment to perform or engage in a purely personal mission or undertaking, is not engaged in the service of his employer, but an employee will not be considered to have so deviated, if at the time his acts and conduct are primarily in furtherance of his employer's business and incidental to and connected with his employment, even though he may perhaps be mixing his personal business and convenience therewith.

Appellant's final two points of error relate to that issue. The eighth point is that the court erred in refusing to give a

requested special instruction as to the issue submitted. That instruction was to the effect that after an employee has completely departed from the course of his employment, his intent to resume his employer's business is not sufficient; but he must actually resume such business before he can be found to be acting in the course of his employment. The court did not err in refusing to submit such instruction.

The ninth point claims error in overruling the appellant's objection to the quoted issue, which objections are based on the substance of that refused special instruction. Under the authorities quoted and cited above, the trial court's issue and instructions were correct and adequate. The requested instruction is so worded as to assume as a fact that Smith had completely departed from the course of his employment, which fact may not properly be assumed under the evidence in this case. Appellant's eighth and ninth points are overruled.

The judgment of the trial court is affirmed.