**Opinion issued February 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-12-00851-CV**

———————————

**MARILYN P. WEAVER, Appellant**

**V.**

**PAUL MCKEEVER, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 12-DCV-197800**

---

**MEMORANDUM OPINION**

Appellant, Marilyn Weaver, sued appellee, Paul McKeever, for malicious prosecution based on a number of citations McKeever issued to Weaver for her non-code-compliant roof. McKeever moved to dismiss, asserting governmental immunity because he issued the citations in his capacity as a code enforcement

officer for the City of Missouri City. The trial court granted McKeever's motion to dismiss. Weaver argues that (1) the trial court erred in granting McKeever's motion to dismiss brought under Civil Practice and Remedies Code section 101.106(f) (the "Tort Claims Act")[1] because she did not bring her suit under the Tort Claims Act and (2) McKeever was not entitled to dismissal because he did not conclusively prove that he was acting in the course and scope of his employment.

We affirm.

## Background

Weaver's roof was damaged during Hurricane Ike in 2008. Beginning in 2010, McKeever, who is a code enforcement officer for the City of Missouri City ("the City"), issued Weaver approximately thirty citations because her roof did not comply with the City's building and maintenance codes.

Weaver sued McKeever for money damages, alleging that he "acted without probable cause in initiating" the prosecutions against her "or in making statements to the prosecuting attorney in that he did not honestly, reasonably, and in good faith believe [Weaver] to be guilty" of the violations for which she was cited. Weaver alleged that McKeever "acted maliciously instigating the criminal prosecution and/or making false and/or incomplete statements to the prosecuting

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–101.109 (Vernon 2011 & Supp. 2013).

2

attorney." Weaver alleged that she was ultimately acquitted of some of the charges against her and that the remaining charges were dropped in September 2011.

In his answer, McKeever asserted that he is an employee of a governmental entity and was being sued for conduct within the general scope of his employment, entitling him to immunity from suit under the Tort Claims Act. On June 8, 2012, McKeever moved to dismiss the claims against him pursuant to Tort Claims Act section 101.106(f).

McKeever supported his motion to dismiss with two affidavits. Gary Smith, the City's Director of Development Services, averred that McKeever was a full time employee of the City and that he was employed as a code enforcement officer. Smith stated that the duties of a code enforcement officer include "inspection of homes and businesses to determine whether they comply with the ordinances of the City of Missouri City." He further stated that officers like McKeever "are authorized to issue notices and citations to residents of the City of Missouri City who are in violation of the City's codes and zoning laws, and they are authorized to file those citations with the City's Municipal Court for the initiation of the prosecution of those citations." McKeever himself averred that every citation he issued to Weaver "was issued while I was performing the duties of a Code Enforcement Officer for the City of Missouri City." McKeever also attached a copy of the City's charter to his motion to dismiss.

Weaver filed a response, alleging that McKeever acted outside the authority granted him by law as a code inspector. Specifically, she argued that McKeever was authorized only to issue citations to residents who were in violation of the City's codes and zoning laws, and, because she was eventually acquitted, McKeever "indisputably acted outside the scope of his authority." She further argued that McKeever issued citations outside the scope of his authority because "there is no provision of law that permits a city code inspector to knowingly continue to bring false and groundless charges against an innocent citizen."

Weaver also argued that McKeever acted in bad faith, as evidenced by his "continued persecution" of her after the municipal court had determined that she was not in violation of the City's codes and by comments overheard by Jeff Holsomback, a roofing contractor who had testified as an expert witness on Weaver's behalf in proceedings related to the citations for her roof. Holsomback provided Weaver with an affidavit, averring:

> One day after court, I was getting into the elevator at the Fort Bend county courthouse. Mr. McKeever got into the elevator with me. He expressed extreme displeasure at the outcome of the case, which had resulted in Ms. Weaver's favor. He made the statement to the effect that if he could not get her on citations for the tarp covering her roof, then he was going to find a way to get her for something else, or words to that effect. The manner in which he said it was extremely inflammatory. . . .
>
> I was shocked when I heard Mr. McKeever make these statements. I could tell from the way he was speaking, his body language, tone of voice, etc. that he has a personal vendetta against Ms. Weaver.

4

Weaver also provided records from the City's municipal court that showed multiple citations against her dating between May 2009 and November 2010. The citations issued prior to August 14, 2010, were shown as "dismissed" either with a finding of not guilty or on the State's motion.[2] The record contained an additional thirteen citations, with recorded violation dates ranging from August 18, 2010, through November 12, 2010, which did not have a recorded disposition, with the exception of one citation that was marked "appealed to county." The documents attached by Weaver reflected that her balance with the municipal court was $3,543 as of July 11, 2011.

McKeever responded, providing copies of the specific ordinances that authorized his actions in issuing citations to Weaver, including: (1) the City's property maintenance code requiring that a building's "roof and flashing shall be sound, tight and not have defects that admit rain"; (2) a City ordinance providing that an owner of real property in violation of city ordinances or building codes "shall be deemed guilty of a misdemeanor, or upon conviction thereof, shall be subject to a fine"; and (3) an ordinance provision that "each day in which any violation shall occur, or each occurrence of any violation, shall constitute a separate offense." He also argued that Holsomback's affidavit was not competent

---

[2] The record contained references to approximately five citations involving a "junked/abandoned vehicle" for which Weaver was apparently fined and which she appealed to the county. These citations do not appear to be part of the basis of this suit.

5

evidence, that it was irrelevant to a determination of whether he was entitled to governmental immunity under section 101.106(f), and that, even if his issuance of citations was motivated by a personal vendetta against Weaver, such a motivation "would not take his actions outside the scope of his employment" with the City.

On August 2, 2012, the trial court dismissed Weaver's claims against McKeever with prejudice. This appeal followed.

## Analysis

In her two issues on appeal, Weaver argues that the trial court erred in granting McKeever's motion to dismiss pursuant to Tort Claims Act section 101.106(f).

### A. Standard of Review

We review McKeever's motion to dismiss as we would a plea to the jurisdiction. *See State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it."); *Hintz v. Lally*, 305 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding that our "standard of review is determined by the substance of the issue to be reviewed rather than by the type of motion to which the trial court's order pertains"); *see also Anderson v. Bessman*, 365 S.W.3d 119, 123–24 (Tex. App.—Houston [1st

Dist.] 2011, no pet.) (analyzing motion to dismiss under section 101.106(f) using standard of review for plea to jurisdiction).

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (holding that sovereign immunity generally extends to governmental officials sued in their official capacities because that is merely "another way of pleading an action against the entity of which [the official] is an angent"); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (holding that sovereign immunity from suit deprives trial court of subject-matter jurisdiction). The existence of subject-matter jurisdiction is a question of law that we review de novo. *State ex rel. State Dep't of Hwys. & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Anderson*, 365 S.W.3d at 123. The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's subject-matter jurisdiction over the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Anderson*, 365 S.W.3d at 124. In deciding a plea to the jurisdiction, a court may not consider the case's merits, but only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Anderson*, 365 S.W.3d at 124.

**B.    Section 101.106(f)**

Tort Claims Act section 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (Vernon 2011).

The supreme court has set out a two-pronged test for determining whether a suit against a government employee is considered a suit against the employee in his or her official capacity only.  *See Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011); *Anderson*, 365 S.W.3d at 124.  The first prong "encompasses two inquiries: whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time."  *Anderson*, 365 S.W.3d at 124.  The second prong is whether suit could have been brought under the Tort Claims Act against the governmental entity.  *Id.*  "The statute strongly favors dismissal of governmental employees."  *Id.*

### i.  Scope of employment

The parties do not contest that McKeever is an employee of a governmental unit, as Weaver acknowledges that McKeever is a code enforcement officer for the

8

City. However, Weaver argues that the trial court erred in granting McKeever's motion to dismiss because he failed to show that the lawsuit was for conduct that fell within the general scope of his employment.

The Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5) (Vernon Supp. 2013); *Anderson*, 365 S.W.3d at 124. An official acts within the scope of his authority if he is discharging the duties generally assigned to him. *Anderson*, 365 S.W.3d at 125 (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)).

Thus, we must examine whether McKeever's acts fall within the duties generally assigned to him, and we conclude that they do. McKeever presented Smith's affidavit testimony, as the City's Director of Development Services, that McKeever is employed as a code enforcement officer. Smith stated that McKeever's duties include inspection of homes and businesses to determine whether they comply with the City's ordinances and that McKeever was authorized to issue notices and citations to citizens who are in violation of the City's codes and zoning laws and to file those citations with the City's municipal court for the initiation of the prosecution of those citations. The only acts alleged by Weaver in

9

her suit against McKeever were allegations that McKeever cited her on at least thirty occasions for violations of the City's building maintenance codes and filed these citations with the City's municipal court for prosecution. As Smith and McKeever both averred, these actions fall within the general duties assigned to McKeever as a code enforcement officer for the City.

Weaver argues that McKeever acted outside the scope of his employment because he acted under personal motives in a "vendetta" against Weaver, as evidenced by Holsomback's affidavit, in which he recounted overhearing McKeever say that "if he could not get [Weaver] on citations for the tarp covering her roof, then he was going to find a way to get her for something else, or words to that effect." However, evidence that an employee brought personal motives to bear in executing his duties as assigned by his employer does not mean that his actions fall outside the scope of his employment. *See Anderson*, 365 S.W.3d at 125–26. "So long as it falls within the duties assigned, an employee's conduct is 'within the scope of employment,' even if done in part to serve the purposes of the employee or a third person." *Id.* (citing *Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869, 872 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.)).

Here, McKeever's actions fall within the scope of his employment because, in issuing citations to Weaver and filing them with the municipal court for prosecution, McKeever was carrying out his duties as a code enforcement officer

10

for the benefit of the City, even if personal motives in part persuaded him in the performance of his duty. Weaver asserts that McKeever acted based on a personal vendetta against her, but Holsomback's affidavit established only that McKeever's interest in Weaver was related to her roof and his belief that she was not in compliance with the City's codes and ordinances. *See id.* at 126 (holding that employee acts within scope of his employment "[i]f the purpose of securing the employer's business motivates the employee" even if also done in part to serve employee's own purposes as well).

Weaver also argues that McKeever acted outside the scope of his employment because he acted "maliciously" in repeatedly issuing citations for which the municipal court found her not guilty or otherwise dismissed the charges. However, Weaver did not provide evidence that the municipal court found her not guilty or otherwise dismissed all of the citations issued to her. The evidence attached to her response to McKeever's motion to dismiss showed that adjudication of several of the citations remained pending as of July 11, 2011, and that she owed a balance of $3,543, presumably for fines assessed against her. And even if she had established that the court found her not guilty on all of the citations, that fact is insufficient to demonstrate that McKeever acted outside the scope of his employment in issuing them in the first place. *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004) (holding that members of city's

11

Board of Adjustment acted within scope of their authority in revoking building permit even though court had later found that such revocation was incorrect).

We hold that Weaver has not alleged any facts against McKeever that fall outside the general scope of his employment. *See Anderson*, 365 S.W.3d at 126.

### ii. *Suit could have been brought under Tort Claims Act against the City*

Weaver also argues that she could not have brought her claim under the Tort Claims Act because she sued McKeever for an intentional tort—malicious prosecution—and the Tort Claims Act does not waive governmental or sovereign immunity for intentional torts. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–101.109 (Vernon 2011 & Supp. 2013).

In *Franka*, the supreme court construed the phrase "could have been brought" from Tort Claims Act section 101.106(f) in determining, in the context of a medical negligence suit against a doctor-employee, whether the plaintiffs' claim could have been brought against the governmental unit—the employer-hospital. 332 S.W.3d at 375–76. It held that an employee need not prove that his employer's immunity from suit has been waived in order to obtain dismissal under section 101.106, and it stated that all common-law tort theories alleged against a governmental unit are assumed to be "under" the Tort Claims Act for purposes of section 101.106. *Id.* at 369, 379–80 (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)). We have already determined that

12

Weaver's pleadings allege a common-law cause of action based on acts within the course and scope of McKeever's employment; accordingly, her suit could have been brought under the Tort Claims Act against the City. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f); *Franka*, 332 S.W.3d at 375; *Anderson*, 365 S.W.3d at 126.

Weaver also argues that dismissal pursuant to section 101.106(f) was improper because she did not bring her suit under the Tort Claims Act and because she sued McKeever in his individual capacity, not in his official capacity. However, we have already determined that section 101.106(f) applies to her claim against McKeever. Thus, under the terms of that provision, her suit "is considered to be against the employee in the employee's official capacity only." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). We also observe that this case is distinguishable on its facts from cases in which courts of this state have allowed a suit to be brought against a government employee in his individual capacity.[3] *See, e.g.*, *Kelemen v. Elliot*, 260 S.W.3d 518, 524 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (finding no evidence that officer was acting in scope of employment when he kissed fellow officer without consent while on duty); *Terrell ex rel. Estate of Terrell v. Sisk*, 111 S.W.3d 274, 278 (Tex. App.—Texarkana 2003, no pet.)

---

[3] The cases relied upon by Weaver in her briefing, such as *Smith v. Davis*, 999 S.W.2d 409 (Tex. App.—Dallas 1999, no pet.), do not address a dismissal pursuant to Tort Claims Act section 101.106 and are likewise distinguishable.

(holding that employee, who killed person with car, did not act in scope of employment because she was on her way to personal appointment in her own car).

We conclude that McKeever was entitled to dismissal of Weaver's claims against him pursuant to section 101.106(f). We overrule Weaver's issues on appeal.

## Conclusion

We affirm the trial court's order dismissing Weaver's claims against McKeever.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.