**John SPELLMANN, Individually and as Executor of the Estate of Velma Spellmann, Gerald Lewis Sheehan Jr., Jane Lynn Sheehan Michaels, Ralph Koopman, and Karen M. Koenig, Appellants,**

v.

**Janet H. LOVE and JHL Interests, Ltd., Appellees.**

**NUMBER 13-16-00011-CV**

Court of Appeals of Texas, Corpus Christi-Edinburg.

Delivered and filed August 10, 2017

Rehearing Denied September 18, 2017

---

Hon. David M. Gunn, Beck Redden LLP, Hon. Jonathan D. Baughman, Hon. Christopher Halgren, McGinnis Lochridge, Houston, TX, for Appellees.

Hon. Ronald B. Walker, Walker Keeling, LLP, Victoria, TX, Hon. Christopher Michael Volf, Hon. Mike Johanson, Hon. Todd Taylor, Johanson & Fairless, Sugar Land, TX, for Appellants.

Before Chief Justice Valdez and Justices Rodriguez and Benavides

## OPINION

Opinion by Justice Benavides

By two issues, appellants John Spellmann, Individually and as Executor of the Estate of Velma Spellmann, Gerald Lewis Sheehan, Jr., Jane Lynn Sheehan Michaels, Ralph Coopmann, and Karen M. Koenig (collectively Spellman, unless otherwise noted) challenge the trial court's summary judgment rendered in favor of appellees Janet H. Love (Janet H. Love or Janet) and JHL Interests, Ltd. (JHL) (collectively "Janet Love Defendants"). We affirm.

### I. BACKGROUND

Spellmann sued appellees Janet H. Love and JHL for unjust enrichment, money had and received, and constructive trust. Spellmann asserted that he was equitably entitled to receive certain disputed oil and gas royalty payments. The trial court disa-

greed and granted an interlocutory summary judgment in favor of Janet and JHL on Spellmann's equitable claims against them. Litigation continued until Spellmann settled with, and then non-suited, Kenneth Love, Love Partnership Interest (LPI), and LPI's general partner Love Enterprises, L.L.C., the remaining defendants. This appeal arises out of Spellmann's actions against Janet H. Love and JHL.

The record reveals that Janet married Kenneth in 1985. While married, Kenneth set up LPI. By a deed dated July 15, 1997 (the 1997 Deed), LPI, through its general partner Love Enterprises, acquired 253 acres of real property in DeWitt County, Texas (the Property) from Spellmann. The parties agree that through this conveyance, LPI acquired the rights to execute an oil and gas lease on the Property. Under the terms of the 1997 Deed, Spellmann reserved a fifteen-year term non-participating royalty interest (NPRI) that would expire on July 15, 2012 unless there was a producing well at the expiration of the term.

It is undisputed that Janet divorced Kenneth in 2008. At the time of the divorce, Janet obtained a property settlement. In January 2009, as part of the settlement, Janet acquired a 50 percent non-executive mineral interest in the Property from LPI.

The summary judgment record shows that on July 15, 2010, LPI entered into an oil and gas lease (the Lease) with Orca Assets, LP, LLC.[1] Orca Assets ultimately assigned the Lease to Matador Resources Company (Matador). Although two wells were being drilled at the time the fifteen-year term expired, no well was actually producing in paying quantities at that time. So under the terms of the 1997 Deed, Spellmann's NPRI became null and void as of July 15, 2012.[2]

After Spellmann's NPRI expired, half of the royalty interest vested in LPI and half in Janet, pursuant to the 2009 divorce settlement. Janet later conveyed all of her non-executive mineral interest in the Property to JHL. In August 2012, Matador completed two wells, which are now producing on the Property.[3]

On April 30, 2014, Spellmann sued Kenneth, LPI, Love Enterprises, Janet, and JHL. In their second amended petition—the live petition at the time the trial court entered summary judgment—Spellmann alleged that Kenneth and his agent Bryan Key wrongfully delayed drilling and production on the Property until after Spellmann's term royalty was set to expire, so that Spellmann could not share in the proceeds of the exploration. Spellmann raised claims for breach of fiduciary duty, constructive fraud, and negligence against Kenneth, LPI, and Love Enterprises. Spellmann also asserted equitable claims of unjust enrichment, money had and received, and constructive trust, against all defendants, including Janet and JHL. Specific as to Janet and JHL, Spellmann set out the following equitable-claim allegation:

---

1. Kenneth Love executed the Lease as manager of Love Enterprises, L.L.C., in its capacity as LPI's general partner.

2. The 1997 Deed provided in pertinent part: "If at the expiration of 15 years from the date of this Deed, oil, gas, or said other minerals are not being produced or mined from said land or any lands with which all or any part of the herein conveyed tract is pooled in pay-

ing or commercial quantities, this reserved royalty interest shall be null and void and the said Grantors' right in such reserved royalty shall terminate."

3. The parties acknowledge that Matador Resources Company later completed two additional wells in or around October 2013, for a total of four producing wells.

Janet [and JHL] had knowledge of the acts Kenneth Love Defendants and Bryan Key engaged in to delay drilling and production of the pooled unit until after [Spellmann's] term royalty expired, and knew that such acts were improper and not permissible, yet knowingly accepted royalty payments that should have been paid to [Spellmann] except for the acts of the Kenneth Love Defendants.

Spellmann sought actual damages and, alternatively, "equitable relief in the form of one-half (1/2) of all royalties from the production of the mineral estate" from Kenneth, LPI, Love Enterprises, Janet, and JHL. He sought exemplary damages from Kenneth, LPI, and Love Enterprises.

On February 16, 2015, Janet and JHL filed their motion for summary judgment, urging that the equitable claims brought by Spellmann against them failed as a matter of law. The trial court agreed and, on April 24, 2015, entered a general interlocutory order granting Janet and JHL's motion for summary judgment, ordering that Spellmann take nothing on their claims against Janet and JHL, and dismissing those claims with prejudice.

During the ongoing litigation against Kenneth, LPI, and Love Enterprises, Spellmann filed a third and fourth amended petitions; the fourth, and last, amended petition was filed on August 31, 2015. This fourth amended petition continued to include Janet and JHL in the style, the opening paragraph, and in the parties and jurisdiction sections. But this petition defined "Defendants" as the three Kenneth Love defendants and developed facts only as to the "Defendants."[4] The only claims and the only factual allegations in support of Spellmann's claims in the fourth amended petition were against the "Defendants"—the Kenneth Love defendants—for breach of a fiduciary executive duty by LPI, negligence by the Kenneth Love defendants, a rule of perpetuities problem as to the Kenneth Love defendants, a punitive damage claim against the Kenneth Love defendants, and secondary liability claims against the Kenneth Love defendants. Finally, Spellmann sought damages resulting from the acts or omissions of the three Kenneth Love defendants and

---

4. In their fourth amended petition, Spellmann included the following facts related to Janet and JHL:

- On the day the Lease was executed ... Orca Assets GP, LLC, paid a bonus of $4,250 per acre to Defendants and Janet Love Defendants. Therefore, Defendants and Janet Love Defendants each received a bonus check for approximately $738,480.
- [I]t is undisputed that Defendants and Janet Love Defendants each paid Bryan Key $12,500 ... for his assistance in connection with obtaining the Lease.
- Had Plaintiffs' term royalty interest survived, Plaintiffs would have been entitled to millions of dollars in past and future royalty payments; payments that were instead paid to Defendants and Janet Love Defendants.
- What, in fact, actually occurred was not a simple expiration of Plaintiffs' term royal-

ty interest due to happenstance or a fortuitous coincidence benefiting Defendants and Janet Love Defendants. To the contrary, Plaintiffs have discovered through the deposition testimony of Kenneth Love, Janet Love, and Bryan Key, together with the production of numerous documents, that ["]Defendants["] took deliberate and intentional actions, in violation of their duty not to "self-deal", for the sole purpose of depriving Plaintiffs of their right to receive royalties pursuant to their fifteen (15) year term royalty.

- Defendants and Janet Love Defendants[ ] have produced documents reflecting that, during the period between December 21, 2012 and July 24, 2015, both Defendants and Janet Love Defendants, each received royalty payments totaling approximately $9,429,893.54, and the total royalty payments paid to date are approximately $18,860,000.00.

prayed for judgment against the three Kenneth Love defendants for the damages to which he was entitled.[5]

The litigation against the Kenneth Love defendants settled in December 2015. Spellmann filed a notice of nonsuit with prejudice as to those parties, and the trial court ordered the nonsuit on December 22, 2015. The following language is expressly included in the nonsuit order:

> Notwithstanding the foregoing or anything to the contrary herein, this Order of Non-Suit with Prejudice does not prejudice or release the claims and/or causes of action that have been or may be asserted by [Spellmann] against Janet H. Love and JHL Interests, Ltd. for injuries, damages, interest, court costs, and other relief arising out the allegations set forth in the above-referenced lawsuit.

This appeal followed.[6]

## II. WAIVER AND AMENDED PLEADINGS

As a preliminary matter, Janet and JHL argue that Spellmann's appeal is "futile because [Spellmann] dropped all of their claims" against Janet and JHL in subsequent amended pleadings, thus acting as a voluntary dismissal of that party. Essentially, Janet and JHL argue that these amended pleadings act as a procedural bar for Spellmann to now assert them on ap-

peal. We disagree under the facts of this case.

 To be sure, as a general rule in civil causes of action in Texas, filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claims as of the time the pleading is filed, and no hearing is necessary to effect the nonsuit. *FKM P'ship, Ltd. v. Bd. of Regents of Univ. Houston Sys.*, 255 S.W.3d 619, 632 (Tex. 2008). The justification behind this general rule is that amended pleadings and their contents take the place of prior pleadings, and thus, causes of action not contained in amended pleadings are effectively dismissed at the time the amended pleading is filed. *Id.* at 633; *see* TEX. R. CIV. P. 65. The same principle holds true for an amended petition that omits a previously-named defendant. *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972); *United Oil & Minerals, Inc. v. Costilla Energy, Inc.*, 1 S.W.3d 840, 843 (Tex. App.—Corpus Christi 1999 pet. dism'd). As a result, abandonment of a cause of action or a defendant in an amended pleading waives error, if any, by the trial court with regard to that abandoned cause of action or defendant. *See Randolph v. Walker*, 29 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Radelow–Gittens Real Prop. Mgmt. v. Pamex Foods*, 735 S.W.2d

---

**5.** We note, however, that Spellmann named Janet and JHL as defendants in the prayer and prayed alternatively for equitable relief "as requested herein."

**6.** During the pendency of this appeal, Spellmann filed an objection to what they believed was the inclusion of unnecessary documents in the clerk's record before this Court. Spellmann asks this Court to sustain its objection and tax costs of the clerk against Janet Love and JHL for the preparation of the purported unnecessary documents. *See* TEX. R. APP. P. 34.5(b)(3) ("In a civil case, if a party requests that more items than necessary be included in

the clerks' record or any supplement, the appellate court may—regardless of the appeal's outcome—require that party to pay the costs for the preparation of the unnecessary portion.").

Our relevant review of this case encompassed some, if not all, of the complained-of documents, and this opinion even references a certain few these documents. As a result, we cannot conclude that such documents were unnecessary. We overrule Spellman's objection and motion to tax costs of the preparing these documents against the Janet Love Defendants.

558, 559–60 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *Dolenz v. All Saints Episcopal Hosp.*, 638 S.W.2d 141, 142 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.); *see also Murphy v. Moore*, No. 13-13-00480, 2015 WL 4592209 at *1 n.1 (Tex. App.—Corpus Christi 2015, pet. denied) (mem. op.).

■ However, the Texas Supreme Court has recognized "possible circumstances" which act as exceptions to this general rule. *FKM P'ship*, 255 S.W.3d at 633. One example is to look at the pleader's intent in determining whether a new pleading supersedes pleadings, or whether the pleader actually intended to waive any rights associated with any cause of action or defendant not included in the new pleading. *Id.* (citing *Ortiz v. Collins*, 203 S.W.3d 414, 421 n.4 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (finding no waiver on appeal because the pleader specifically reserved the right to re-assert or appeal trial court order dismissing causes of action, which were not later pled in the amended pleading)). Under those circumstances, the pleader has not waived for purposes of appeal, any error regarding those pleadings, parties, or claims. *See id.*

■ We hold that the *Ortiz* exception applies to the facts of this case. The trial court signed its order granting summary judgment in favor of Love on April 24, 2015. After this ruling, Spellmann amended their pleadings twice—the first labeled "Plaintiffs' Third Amended Petition"; and the second labeled "Plaintiffs' Fourth Amended Petition." The fourth amended petition was Spellmann's last live pleading before the trial court. Although Spellmann removed all claims against Janet and JHL from their fourth amended petition, three key features of that petition indicate Spellmann's intent to not abandon their causes of action against Love. First, the style of the fourth amended petition continues to name "JHL Interests, Ltd." and "Janet H.

Love" as defendants. Second, the "Parties" section of the petition lists JHL Interests, Ltd. and Janet H. Love as defendants. Third, the amended petition identifies JHL Interests, Ltd. and Janet H. Love as defendants and prays for "judgment against Defendants for the damages and/or equitable relief for which they are entitled, as requested herein."

In addition to gleaning Spellmann's intent of non-abandonment solely from his amended pleading, the order of nonsuit signed by the trial court on December 22, 2015 as to the remaining parties solidifies Spellmann's non-abandonment, post-summary judgment intent. The nonsuit order expressly states: "Notwithstanding the foregoing or anything to the contrary herein, this Order of Non-Suit with Prejudice does not prejudice or release the claims and/or causes of action that have been or may be asserted by [Spellmann] against Janet H. Love and JHL Interests, Ltd. for injuries, damages, interest, court costs, and other relief arising out the allegations set forth in the above-referenced lawsuit." This language is analogous to the language used in *Ortiz* and further illustrates Spellmann's intent.

In light of Spellmann's efforts to clearly demonstrate his intent to not abandon his right to pursue the trial court's summary judgment beyond the interlocutory ruling, we conclude that Spellmann has not waived error, and we now reach the merits of the trial court's summary judgment ruling. *See Ortiz*, 203 S.W.3d at 421 n.4. Finally, we note that this Court has held that filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claims as of the time the pleading is filed. *See Murphy*, 2015 WL 4592209 at *1 n.1. However, *Murphy* does not mention or discuss the "other possible exceptions" to this general rule as recognized in *FKM*,

and therefore, we find it distinguishable and inapplicable to the present case.

### III. SUMMARY JUDGMENT

By his two issues on appeal, Spellmann contends that the trial court erred by granting Janet and JHL's motion for summary judgment.

### A. Standard of Review

We review the trial court's summary judgment de novo. *Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). In order to prevail on traditional summary judgment claim, movant must show that: (1) no genuine issue of material fact exists and (2) he is entitled to judgment as a matter of law. *BCCA Appeal Grp. v. City of Houston,* 496 S.W.3d 1, 7 (Tex. 2016).

### B. Discussion

In their second amended petition, Spellmann asserted equitable claims of unjust enrichment, money had and received, and constructive trust against Janet H. Love. Spellmann alleged that she received more than $9 million in royalty payments from December 21, 2012 and December 23, 2014, approximately $3,600,000, of which Janet H. Love should not possess, and would not possess, "but for the conduct of Defendants Love Enterprises, Love Partnership, and Kenneth Love." Furthermore, Spellmann asserted that Janet was "well aware" of the actions of the other defendants to "delay drilling and production for the sole purpose of depriving [Spellmann], as non-participating royalty interest owners, of their entitlement to 50% of the royalties from production." Spellmann further alleged that Janet: (1) "passively received the benefits of wrongfully obtained royalty payments in an unconscionable manner" through their awareness of the other defendants attempts to delay pro-

duction; (2) held money, or its equivalent, that in equity and good conscience belongs to Spellman; and (3) should be subjected to a constructive trust on the royalty payments that would have been due to Spellmann.

Janet and JHL filed a motion for summary judgment alleging that Spellman's "money had and received" claim against Janet and JHL fails as a matter of law because: (1) Spellmann has no ownership in Janet H. Love's 50-percent non-participating mineral interest or in their expired non-participating royalty interest; and thus, neither Janet nor JHL hold money that rightfully belongs to Spellman; (2) the 1997 Deed and Lease entered into in 2010 are express contracts that govern the subject matter of the dispute, precluding the assertion of a money had and received claim; and (3) Janet was vested with a real property interest when Spellman's non-participating royalty interest terminated. This interest was later conveyed to JHL, and Spellmann has not asserted a viable cause of action to collaterally attack this interest. Further, Janet and JHL asserted that Spellmann's unjust enrichment claim fails as a matter of law because Janet did not engage in "any wrongdoing and because unjust enrichment is not an independent cause of action."

The undisputed record shows the following: (1) Spellmann's non-participating royalty interest expired July 15, 2012; (2) in 2008, pursuant to a property settlement agreement following the Loves' divorce, Janet received from Love Partnership Interests an "undivided 50% [non-executive] interest ... in the oil, gas, and other minerals in" 348 acres of land that are the subject of the litigation; (3) in December 2012, Janet deeded her interest in the subject property to JHL; (4) although exploration and drilling operations had commenced the month prior to the expiration

of Spellmann's non-participating royalty interest, production worth millions of dollars began in August 2012, after the expiration of Spellmann's non-participating royalty interest.

 A claim for money had and received is an equitable action that may be maintained to prevent unjust enrichment when the defendant obtains money, which in equity and good conscience belongs to the plaintiff. *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 710–11 (Tex. App.—Corpus Christi 2006, pet. denied). A cause of action for money had and received is not based on wrongdoing but instead, looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another. *Id.* at 711. It is essentially an equitable doctrine applied to prevent unjust enrichment.

Here, the record conclusively shows that Spellmann no longer had an ownership interest in the property at the time that Janet received the money. Furthermore, Janet received the money pursuant to a valid agreement following the divorce. Thus, we would conclude that Janet and JHL conclusively established that the money received did not "in equity or good conscience" belong to Spellmann.

Next, to the extent that Spellmann asserted a cause of action for unjust enrichment, it also fails as a matter of law because it is not an independent cause of action, but rather "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay. *Id.* at 709 n.4. The doctrine applies the principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution. *Id.* Because we hold that summary judgment was properly granted on Spellmann's claim for money had and received, we hold the same with regard to Spellmann's claims of unjust enrichment, or his attempts to recover under this doctrine. *Id.*

We overrule Spellmann's two issues.

### IV. CONCLUSION

We affirm the trial court's judgment.